## UNITED LENDING CORPORATION

### v.

### CITY OF PROVIDENCE, et al.

#### No. 2000–499–Appeal.

Supreme Court of Rhode Island.

July 1, 2003.

---

Gregory Sorbello, Esq., Providence, for Plaintiff.

Richard Riendeau, Esq., for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on April 1, 2003, on appeal by the defendant, City of Providence (the city or defendant), from a judgment granting summary judgment in favor of the plaintiff, United Lending Corporation (United or plaintiff)[1] and denying its cross-motion for summary judgment. A justice of the Superior Court ordered the city to reimburse the plaintiff for real estate taxes that it paid to the city as a result of incorrect information supplied by the tax collector. The plaintiff alleged that because it was erroneously informed by the tax collector that property taxes were in arrears and that a tax sale was imminent unless the outstanding liens were satisfied, it paid taxes that were wrongfully assessed. The manner in which the city addressed its statutory obligations and failed to protect its pecuniary interests is the subject of this appeal.

---

1. The defendant, Fernando Cunha's cross-motion for summary judgment was also granted; he is not a party to this appeal.

This saga began in 1980 after the owners, Adolf J. Eunis and Shirley M. Eunis, failed to satisfy outstanding tax liens and the property, located at 34–36 Woodman Street was sold by the city at tax sale. No bids equivalent to the outstanding taxes were received and, pursuant to G.L.1956 § 44–9–14, the city took tax title to the real estate. Property taxes continued to accrue until 1991, when a Superior Court judgment foreclosing all rights of redemption entered in favor of the city. Pursuant to § 44–9–34,[2] this property no longer was subject to municipal taxes.

However, the city failed to protect its ownership interest in the parcel and, in 1992, the property was sold again, this time by the Providence Water Supply Board (board), for outstanding water liens from 1979 to 1989. The defendant, Fernando Cunha (Cunha), purchased the property and acquired by tax deed the city's entire interest in the parcel. Cunha conveyed the property by quitclaim deed to Phoenix Realty and Olivia Realty (collectively as Realty). In June 1993, Realty petitioned the Superior Court to foreclose all rights of redemption to the property. Although provided with notice of the petition, the city failed to respond. As a result, pursuant to § 44–9–31, its right to contest the validity of the sale by the board and its right to redeem the property were forever barred. Judgment was entered in favor of Realty, foreclosing the city's right of redemption and granting Realty absolute title.[3] A series of subsequent conveyances and a mortgage to United have culminated in this proceeding.

Realty conveyed the property to Larry King, who conveyed the property to Marco T. Giron and Ana R. Giron (Giron), United's mortgagor. At this point, the city's negligent attention to its responsibilities respecting the assessment and collection of property taxes becomes acute. The record discloses that United requested and received from the city a municipal lien certificate that erroneously reflected outstanding taxes, from 1977 through 1996, amounting to $28,963.97, including interest. The certificate also contained a declaration that the property was slated for auction for nonpayment of taxes at the city's tax sale on June 26, 1997. United promptly paid the taxes and interest charges in full.

Shortly thereafter, United discovered that the municipal lien certificate that the city prepared was incorrect, that tax liens dating to 1977 were not valid and taxes were not owed. United sought reimbursement for these payments. In a letter dated October 16, 1997, plaintiff requested a refund from the city.[4] In its first demand,

2. General Laws 1956 § 44–9–34 reads as follows:

> **"Holding and disposition of land foreclosed by town.** After foreclosure by a town of the rights of redemption under a tax title, the land shall be held and disposed of like any land belonging to it and held for municipal purposes, and *shall not while held be assessed for taxes.* The land may be disposed of without the necessity of giving the notice provided for by § 45–3–12."
> (Emphasis added.)

3. This is the third appeal this term in which the city sought relief from a judgment of the Superior Court after having failed to protect its interests in connection with property conveyed by tax deed. *See Smith v. City of Providence,* No.2002–150A., (R.I., filed June 27, 2003) (mem.); *Karayiannis v. Ibobokiwe,* No.2001–526A., (R.I., filed June 16, 2003).

4. United sought from the city the return of $26,658.39, the amount of taxes assessed and interest accrued more than three years before the transfer date and alleged to have been improperly demanded and erroneously paid. In separate dealings, United was reimbursed by Mortgage Guarantee Title Company for the tax paid on the three years before the property was transferred.

made to the tax collector, United contended that, pursuant to § 44–9–1,[5] the city's tax lien terminated after three years had expired because the property had been alienated and the deed was recorded. United next made a demand to the city solicitor, again receiving no response. The plaintiff then turned to the Superior Court and filed a four-count complaint against the city, the Eunises and Cunha. The plaintiff's complaint sought reimbursement for the taxes illegally collected and retained and alternatively, United alleged unjust enrichment by the Eunises, Cunha and the city and negligent misrepresentation by the city. United filed a motion for summary judgment, and the city and Cunha filed separate cross-motions for summary judgment.

The city's defense to this claim is grounded in G.L.1956 § 45–15–5;[6] the city contends that by failing to make a presentment to the city council, plaintiff's complaint was not properly before the court. The city raised this issue as an affirmative defense in its answer to plaintiff's complaint.[7] The hearing justice rejected the city's argument and concluded that § 45–15–5 did not apply based on the equitable nature of the claim. A bench decision on the summary judgment motions subsequently was issued by the hearing justice.

In her decision, the motion justice noted that, pursuant to § 44–9–31,[8] the city failed to answer Realty's Superior Court petition to foreclose its rights of redemption to the property and therefore waived its right to contest the title that initially was acquired by Cunha and transferred by quitclaim deed to Realty. The motion justice also concluded that no viable tax liens existed at the time the city supplied the incorrect municipal tax lien certificate to United, no taxes were owed and United was entitled to a return of its payments. She denied the city's motion for summary judgment and granted summary judgment in favor of United and Cunha. The city was ordered to reimburse United for the $26,540.98, plus interest and costs that were paid erroneously and that the city

---

5. Section 44–9–1 provides in relevant part as follows:

   "**Tax lien on real estate.** (a) Taxes assessed against any person in any town for either personal property or real estate shall constitute a lien on the real estate. * * *
   "(b) The lien shall terminate at the expiration of three (3) years thereafter if the estate has in the meantime been alienated and the instrument alienating the estate has been recorded * * *."

6. General Laws 1956 § 45–15–5 provides the following:

   "**Presentment to council of claim or demand against town.** Every person who has any money due him or her from any town or city, or any claim or demand against any town or city, for any matter, cause, or thing whatsoever, shall take the following method to obtain what is due: The person shall present to the * * * city council of the city, a particular account of that person's claim, debt, damages, or demand, and how incurred or contracted; which being done, in case just and due satisfaction is not made to him or her by the town or city treasurer of the town or city within forty (40) days after the presentment of the claim, debt, damages, or demand, the person may commence his or her action against the treasurer for the recovery of the complaint."

7. The city also contended that United failed to name the treasurer in its complaint. This is simply incorrect. The complaint specifically names the "City of Providence, by and through its treasurer[.]"

8. Section 44–9–31 requires that a person claiming an interest in property must raise any question concerning the validity of the tax title by answer filed in the proceeding on or before the return day, or else be forever barred from contesting or raising the question in any other proceeding. Additionally, specifications setting forth the matters upon which he or she relies to defeat the title must be filed, or all questions of the validity of the tax title are deemed waived.

wrongly withheld. Subsequently, the city appealed.[9] On appeal, the city has raised several issues that we shall address seriatim.

### Standard of Review

▇▇▇ In passing on a grant of summary judgment by a justice of the Superior Court, this court conducts a *de novo* review. "Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment." *Carlson v. Town of Smithfield,* 723 A.2d 1129, 1131 (R.I.1999) (per curiam). "[A] party who opposes a motion for summary judgment carries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I.1996). Accordingly, in deciding whether the trial justice erred in granting summary judgment for United and denying the city's motion, we shall conduct a *de novo* review of the record to determine whether issues of fact existed as the city alleged and, additionally, whether United was entitled to judgment as a matter of law.

### Section 45–15–5 Notice Requirement

The city reasserts on appeal that the suit against it should have been abated and dismissed and its motion for summary judgment granted because United failed to comply with the provisions of § 45–15–5; no written demand for reimbursement was filed with the city council before the suit was initiated. As noted, the record discloses that United notified the city treasurer and the city solicitor and received no response from either official.

The plaintiff responds that it was in technical compliance with the notice statute because it filed a presentment to "the [c]ity of Providence" on October 16, 1997, and again on February 2, 1998, well in advance of the forty-day waiting period set forth in § 45–15–5. Further, some five months after suit was commenced, plaintiff did submit a claim to the city council seeking "immediate reimbursement of $26,540.98 from the [city] * * * for the erroneous collection of taxes." Having apparently ignored this demand, as well as the two previous requests for reimbursement, the city now contends that the demand was inadequate and failed to fulfill the statutory purpose of § 45–15–5. United argues that in addition to its technical compliance, blind allegiance to § 45–15–5 is not appropriate under the circumstances. Further, United contends that because it was partially seeking declaratory relief, § 45–15–5 was inapplicable.

In count 1 of its complaint, United sought recovery of tax payments that the city wrongfully assessed. Count 2 was a claim for unjust enrichment against the

**9.** On appeal to this Supreme Court, in the course of the oral argument and upon consideration of the record in this case, it became apparent that the judgment was not a final judgment since it did not dispose of remaining claims and cross-claims of the parties. Moreover, the Superior Court did not enter a judgment pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure. The papers in the case were remanded to the Superior Court for a Rule 54(b) entry of judgment and then returned to this Court. We do not regard the city's premature appeal to be fatal and shall treat the appeal as if it had been timely filed after judgment was entered. *See Russell v. Kalian,* 414 A.2d 462, 464 (R.I. 1980).

city and the previous owners for taxes assessed before Giron purchased the parcel, and count 3 claimed damages for misrepresentation by the city and reliance by plaintiff to its detriment.[10] According to United, because the claim for unjust enrichment necessarily includes elements of declaratory relief, § 45–15–5 is not applicable. However, the trial justice found in favor of plaintiff on count 1, the demand for recovery of the illegally assessed taxes, and made no findings with respect to the claim for unjust enrichment. Thus, the fact that unjust enrichment is a claim for equitable relief is irrelevant to our analysis.

On its face, the provisions of § 45–15–5 are broad in scope and specific in procedural requirements:

"Every person who has any money due him or her from any town or city, or any claim or demand against any town or city, for any matter, cause, or thing whatsoever, shall * * * present to the * * * city council of the city, a particular account of that person's claim, debt, damages, or demand, and how incurred or contracted; * * * in case just and due satisfaction is not made to him or her * * * within forty (40) days[,] * * * the person may commence his or her action against the treasurer * * *."

This Court has had occasion to pass upon the application of this statute and has generally found monetary claims against municipalities to be strictly governed by the presentment and notice provisions set forth in § 45–15–5. We have held that the purpose of the forty-day waiting period after a claim has been presented to the city or town council is to afford the municipality "a reasonable opportunity to settle a claim without putting the municipality to

the expense of defending an action at law." *Bernard v. Alexander,* 605 A.2d 484, 485 (R.I.1992) (per curiam); *see also Serpa v. Amaral,* 635 A.2d 1196, 1198 (R.I.1994) (per curiam) ("This court has never waived the notice requirements on the basis of the municipality's actual knowledge."). We recognized in *Mesolella v. City of Providence,* 508 A.2d 661 (R.I.1986), that compliance with the statute's notice requirements and the forty-day waiting period are conditions precedent to filing suit and may be grounds to challenge the appropriateness of a court's exercise of power. *Id.* at 666. (citing *Whalen v. Bates,* 19 R.I. 274, 276, 33 A. 224, 224 (1895)).

We are of the opinion that United's claim was governed by the presentment requirements of § 45–15–5. We reject the reasoning of the motion justice that § 45–15–5 was inapplicable because United's claims primarily were equitable in nature. It is true that claims for unjust enrichment sound in equity, *see Renaud v. Ewart,* 712 A.2d 884, 885 (R.I.1998) (mem.); *Simpson v. Dailey,* 496 A.2d 126, 128 (R.I.1985), and that in general, equitable actions do not fall within the purview of § 45–15–5. *See State v. Eight Cities and Towns,* 571 A.2d 27, 29 (R.I.1990) (claim for a declaration of rights and liabilities not within reach of § 45–15–5 and complainant not obligated to comply with statute when most of available remedies in the controversy were equitable in nature); *Town of Johnston v. Ryan,* 485 A.2d 1248, 1250 (R.I.1984) (sex discrimination complainant not required to comply with § 45–15–5 since most of the remedies available were equitable in nature); *Lonsdale Co. v. City of Woonsocket,* 25 R.I. 428, 443, 56 A. 448, 454 (1903) (complaint for injunction

10. The trial justice noted that count 4 failed to state a claim, and this finding has not been appealed.

against a city for a continuing trespass not subject to presentment and notice requirement). However, in *Fish v. Higbee*, 22 R.I. 223, 224–25, 47 A. 212, 212 (1900), this Court analyzed the predecessor statute of § 45–15–5 and concluded that although a claim for the return of illegally assessed taxes was an equitable action in assumpsit against the municipality, we nonetheless held that presentment of the claim to the town council before the complaint was filed was a condition precedent to suit. Regardless of our determination that a complaint against a municipality for return of illegal taxes is subject to the provisions of § 45–15–5, this conclusion is of no assistance to the city under the circumstances of this case.

▇ When an action, filed within the statute-of-limitations period, is considered *prematurely brought* for failure to comply with the presentment provisions of § 45–15–5, summary judgment is inappropriate because it is a final adjudication of the claim. *Serpa*, 635 A.2d at 1199. Under these circumstances, the complaint is subject to abatement or dismissal, not final judgment. Pursuant to G.L.1956 § 9–1–22,[11] the plaintiff is allowed one year from the date of the termination of the action to comply with § 45–15–5 and file another lawsuit. *Serpa*, 635 A.2d at 1199. (citing *Blessing v. Town of South Kingstown*, 626 A.2d 204 (R.I.1993)).

▇ Moreover, this Court has relieved a party of the notice requirements of § 45–15–5 when strict compliance with the statute does not comport with the notion of substantial justice and has held that failure to comply may not be grounds for a dismissal on the merits. *See Bernard*, 605 A.2d at 485 (rigid application of the rule concerning the § 45–15–5 forty-day waiting period considered unjust when statute of limitations otherwise would expire during this time; actions may be brought within the waiting period and the proceedings stayed until the forty-day period has expired, but not dismissed on the merits). Summary judgment is a final adjudication and is not the appropriate remedy when an action is filed in violation of § 45–15–5. To enter a judgment for the city on a claim for reimbursement of taxes erroneously paid because of its own negligence is patently unjust and does not further the statute's legislative purpose.

▇ Additionally, under the circumstances in this case, we are satisfied that United's post-filing notice to the city council adequately served the intended purpose of the statute: to afford the municipality an opportunity to settle the claim before litigation commences. We previously have noted that the rationale behind a forty-day notice requirement to the city council is to afford the municipality "a reasonable opportunity to settle a claim without putting the municipality to the expense of defending an action at law." *Bernard*, 605 A.2d at 485. This was United's third written demand for reimbursement and, as with its previous demands, the city ignored this request. The city had abundant opportunities to equitably deal with its taxpayer. Having ignored both opportunities to repay the money it wrongfully extracted from plaintiff and utterly failing to respond to United's written communications, we fail to see how the intended purpose of the

---

11. General Laws 1956 § 9–1–22 provides in pertinent part:

"**Extension of time after termination of action.** If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff * * * may commence a new action upon the same claim within one year after the termination."

statute possibly could be furthered by abating this suit. Because, at best, the city was entitled to a stay of the proceeding while plaintiff complied with the provisions of § 45–5–5, we decline to allow the city to delay the inevitable reimbursement of tax payments to plaintiff based upon blind allegiance to the technicalities set forth in § 45–15–5.

In so ruling, we are mindful that the city supplied erroneous property tax information to plaintiff and wrongfully threatened to sell its property at tax sale and then failed to rebate the taxes or even to provide counsel with the courtesy of a response to his demands. For the city to come before this Court and whine about plaintiff's procedural failings is contrary to all reason. Therefore, we decline to reward the city with the temporary and superficial victory that it seeks. This is not a claim giving rise to complex litigation with significant issues to be resolved by a finder of fact; the only effort needed to resolve this claim was the city's acknowledgment that it allowed the property to slip through its fingers over a decade ago, and promptly returning United's money. The costs and expense that now have befallen the city in its efforts to contest United's claims were self-inflicted and wholly avoidable. We reject the city's contention that United's failure to strictly comply with the notice provisions of § 45–15–5 warranted summary judgment in its favor. We affirm the decision of the hearing justice denying the city's motion for summary judgment, but do so on different grounds.

### The City's Defense to Summary Judgment

The city also challenges the grant of summary judgment for United and argues that factual issues concerning the validity of the board's tax sale and questions surrounding United's rightful ownership of the property remain in dispute. The city asserts that because it was the rightful owner of the property, all outstanding liens for property taxes and water usage merged with its title. Therefore, the city contends, there was no lien for the board to enforce, and the sale in 1992 was void. The city's untimely attack on United's title was launched by way of a third party complaint seeking to vacate Realty's 1993 Superior Court judgment that foreclosed the city's right of redemption to the property. The city also points to deficiencies in the procedures employed by the board, including its failure to notify the city of its intention to auction the property for nonpayment of water use charges. The city's arguments are without merit; its failure to protect its rights in 1993 is fatal to its claims today.

Because the city ignored Realty's foreclosure petition and failed to comply with the provisions of § 44–9–31,[12] it is forever barred from contesting the board's tax sale. Whether the board's lien merged with the city's title or was extinguished by operation of law is irrelevant to the issues raised in this case. By failing to respond to the petition to foreclose its rights of redemption to the property, the city is forever barred from litigating this issue in any other proceeding.

---

**12.** In no uncertain terms, § 44–9–31 provides in pertinent part:

"If a person claiming an interest desires to raise any question concerning the validity of a tax title, the person *shall* do so by answer * * * on or before the return day, * * * or else *be forever barred* from contesting or raising the question in any other proceeding. He or she *shall* also file specifications setting forth the matters upon which he or she relies to defeat the title; and unless the specifications are filed, * * * *shall be deemed to have been waived.*" (Emphases added.)

This Court previously has declared that a party's failure to comply with the mandatory provision of § 44–9–31 by responding to a petition to foreclose the rights of redemption forever bars the party from contesting title or otherwise challenging the tax sale procedures. *See Karayiannis v. Ibobokiwe,* No.2001–526–A. (R.I., filed June 16, 2003); *Norwest Mortgage, Inc. v. Masse,* 799 A.2d 259, 263 (R.I.2002) (per curiam); *Albertson v. Leca,* 447 A.2d 383, 385–86 (R.I.1982). The city's right to contest the board's sale has long expired; any defects in the procedure were cured by the subsequent judgment foreclosing the city's right of redemption. *See Kildeer Realty v. Brewster Realty Corp.,* No.2001–512–A. (R.I., filed June 27, 2003). Accordingly, the judgment of the trial court, finding that the city was precluded from contesting the tax sale, is affirmed.

### Summary Judgment for United

On appeal to the Supreme Court, the city argues that the judgment declaring that it was unjustly enriched by its receipt and retention of tax payments from United is erroneous. As noted, however, this issue is irrelevant to our opinion because the trial justice entered judgment on count 1 of the complaint, the claim for recovery of taxes that were wrongfully collected. She made no findings relative to the count for unjust enrichment, and that claim is not appropriately before this Court. The only issue for our consideration is whether the taxes paid by United were in fact due and owing at the time of the payment and whether United was entitled to reimbursement.

The plaintiff correctly contends that, once the city obtained title to the property by a foreclosure proceeding in accordance with § 44–9–24, property taxes no longer accrued. Pursuant to § 44–9–34,[13] when the city took absolute title to the property in 1991 upon foreclosure of the Eunises' right of redemption, all prior liens were extinguished and no further property taxes were assessed on property that the city owned. In addition, § 44–9–1(b) provides that property tax liens "shall terminate at the expiration of three (3) years thereafter if the estate has in the meantime been alienated and the instrument alienating the estate has been recorded * * *." Therefore, plaintiff argues that any tax liens that arose before the city acquired the fee terminated once the estate was alienated and the deed was recorded. We agree.

Although real estate taxes may have been rightfully assessed from the date of the tax sale until 1991, when the city obtained absolute title to the property, the liens for these taxes terminated by operation of law. Moreover, property taxes did not accrue again until the board's sale to Cunha in 1992.[14] However, when Cunha conveyed to Realty, and Realty obtained a judgment foreclosing the city's right of redemption, any tax liens that may have attached likewise were terminated. Finally, any liens that accrued after Realty's acquisition terminated at the expiration of three years, when the property again was transferred and ultimately conveyed to Giron, plaintiff's mortgagor.

---

**13.** Section 44–9–34 provides in part:
> "**Holding and disposition of land foreclosed by town.** After foreclosure by a town of the rights of redemption under a tax title, the land shall be held and disposed of like any land belonging to it and held for municipal purposes, and shall not while held be assessed for taxes."

**14.** Since the city was under the belief that it was the owner in fee of this parcel from 1991, we fail to see how any taxes were assessed because, as the city notes, it does not tax itself.

The hearing justice analyzed each transfer from the date the city took tax title in 1980 until the payment by United. She held that all liens for taxes assessed from 1980 until the city obtained absolute title in 1991 were extinguished by operation of law. The hearing justice further found that no taxes accrued from 1991 to 1992, when the board held a second tax sale. She further found that any tax liens that may have accrued during this period were extinguished when Realty's title became absolute in 1993. Therefore, the hearing justice concluded, the city was liable to plaintiff for all taxes that it paid from 1980 to 1993, plus interest and penalties.[15]

We are of the opinion that the hearing justice carefully examined the record in this case and correctly concluded that no factual issues remained in dispute. The hearing justice properly granted summary judgment in United's favor, and denied summary judgment for the city. Having reviewed the admissible evidence in each party's respective favor, we agree with the trial justice that United was entitled to judgment as a matter of law. United is owed reimbursement for tax payments, plus interest and costs in accordance with this decision.

### Conclusion

For the foregoing reasons, the defendant's appeal is denied and dismissed and the Superior Court judgment is hereby affirmed. The papers in this case are remanded to the Superior Court.

Justice FLAHERTY did not participate.

---

**15.** The hearing justice found that United was reimbursed by the title insurance company for taxes that it paid for the period after Realty's acquisition. Therefore, we need not concern ourselves with these payments.